| Name of Assigned Judge | LaShonda A. Hunt | CASE NO. | 18bk18105 |
|---|---|---|---|
| DATE | January 23, 2019 | | |
| CASE TITLE | In re Lionell Martin, Sr. | | |
| TITLE OF ORDER | Order on Valuation Hearing | | |

**DOCKET ENTRY TEXT**

Capital One's objection to confirmation of debtor's plan is sustained, in part. The value of its collateral listed in section 3.2 of debtor's plan is determined to be $4,662.50. Debtor has 10 days to file and serve an amended plan. Confirmation is continued to February 11, 2019, at 10:30 am, for a final hearing.

### STATEMENT

This matter is before the court for ruling following a valuation hearing. Debtor Lionell Romeo Martin, Sr. ("Martin") has proposed a Chapter 13 plan that would cramdown the allowed secured claim on his 2006 Ford Expedition XLT ("Vehicle"). In other words, Martin seeks to repay the replacement value of the Vehicle over the life of his plan pursuant to 11 U.S.C. §§ 506(a), 1325(b). Capital One Auto Finance ("Capital One") holds a security interest in the Vehicle, and opposes confirmation on the ground that the plan understates the value of its collateral. For the following reasons, the court sustains Capital One's objection, in part.

### Background[1]

The following facts are taken from the parties' joint pretrial stipulations (Dkt. #61), as well as the testimony and admissible evidence[2] presented at the valuation hearing held on

---

[1] The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334(b), as these are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (L). Furthermore, venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

1

| Name of Assigned Judge | LaShonda A. Hunt | CASE NO. | 18bk18105 |
|---|---|---|---|

January 7, 2019. In addition, the court takes judicial notice of the docket entries in Martin's bankruptcy case. *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989). Martin filed a Chapter 13 bankruptcy petition on June 26, 2018. On Schedule A/B, he listed the current value of the Vehicle with approximately 110,000 miles as $4000, and on Schedule D, identified Capital One as holder of a lien on the Vehicle in the amount of $5,000. Martin's original plan filed on July 9, 2018 did not treat the Vehicle at all. (Dkt. #17). Capital One filed a timely proof of claim for a secured amount of $5,859.84 on July 19, 2018. (POC 1-1). Martin amended his plan on August 10 and asked the court to value Capital One's secured claim pursuant to § 506(b) at $1,602 with 5.5% interest. (Dkt. #26, Sect. 3.2). That drew a confirmation objection from Capital One, who contended that the National Automobile Dealer Association ("NADA") reflected a higher retail value—$6,225—and sought a minimum of 6% interest. (Dkt. #32). Martin responded in writing, asserting that 5.5% interest was appropriate and the fair market value of the Vehicle according to an Edmunds' Insider quote he attached[3] was $1,171 for a trade-in and $1,978 for a private party sale. (Dkt. #36). Martin proposed his final plan on November 1, 2018, (Dkt. #45), offering the same treatment of Capital One's claim as in the August 10 plan.

Martin testified at the valuation hearing that he had owned the Vehicle since 2015 and was currently unemployed. However, his original Schedule I reflects that he had been a Lyft driver for two years. (Dkt. #15). According to Martin, he used the Vehicle as a utility truck to haul items and move things, and on a more regular basis, to run errands, search for jobs, and commute back and forth to Indiana for doctor's visits. He described the Vehicle as 13 years old with 130,000 miles and in rough/fair condition. Martin pointed to several unaddressed mechanical issues that he personally observed, including a transmission that slips from 3rd to 4th gear when driving and accelerating, two balding front tires that need replacing, and a defective power-steering pump that causes difficulties with steering. In addition, Martin identified cosmetic damage on the Vehicle, namely scratches on the outside that he considered "minor" body damage, fading paint on the passenger rear side, the front bumper coming off, interior seats with cuts and peeling in various areas, and worn carpet. Martin stated that he was capable of doing some repairs on the car but only minor work.

Martin pointed to the Edmunds' quote suggesting that a private sale should net $1,978, but offered no further details in support of his belief that the proper value of the Vehicle was $1,602. As previously indicated *supra* at fns. 2 and 3, the court agreed with

---

[2] Martin, who is *pro se*, filed two proposed trial exhibits on the docket (Dkt. #62), instead of submitting them to chambers as required by the court's pretrial order (Dkt. #56). However, after Capitol One objected pretrial to admission of both documents on various evidentiary grounds, Martin voluntarily withdrew Ex. 2 (automotive repairs quote). And at the end of the hearing, the court sustained the objection to Ex. 1 (Edmunds.com quote) for lack of foundation. Both of Capital One's exhibits were admitted without objection.

[3] This is the same document that Martin offered as Ex. 1 at the evidentiary hearing. *See* Fn. 2, *supra*.

| **Name of Assigned Judge** | LaShonda A. Hunt | **CASE NO.** | 18bk18105 |
|---|---|---|---|

Capital One that the Edmunds' quote was inadmissible on several grounds. Martin did not present any other witnesses or evidence on valuation.[4]

Capital One presented the testimony of Mike Gaffigan ("Gaffigan") whose company was hired to appraise the Vehicle. Gaffigan testified that he has been an appraiser for 42 years and the owner of Property Damage Appraisers since 1996. One of his employees inspected the Vehicle in November 2018—at 125,469 miles—and prepared the written appraisal dated November 28, 2018, which Gaffigan reviewed. (Cr.'s Trial Ex. 1). Gaffigan believed that the inspection lasted about five minutes and involved looking at the Vehicle for evidence of obvious physical damage (suggesting major collisions) and taking pictures. Gaffigan conceded that he and his staff are not certified mechanics, so they do not inspect mechanicals or drive the car. The appraisal indicated that no damages were found and assessed the Vehicle condition as overall pretty good with normal wear and tear, i.e., scratches, dings and fading paint, on the exterior. Gaffigan opined that the NADA book value of the Vehicle would be $6,600.

Gaffigan also pulled dealer quotes for sale listings of the same year, make and model as the Vehicle, through the Mitchell Work Center.[5] In assessing the replacement value if the Vehicle were a total loss, Gaffigan searched for comparable vehicles for sale within 150 miles of Martin's location with a typical 138,000 miles. He found five that fit the bill and, after making certain adjustments,[6] concluded that the comparable retail values actually ranged from $4,938.88 to $5,850.21, for an average of $5,270.55. Making a final deduction of $120.18 for the Vehicle's condition, Gaffigan reached a settlement value of $5,150.37. Capital One asserts that averaging the NADA book value and settlement value yields a valuation amount of $5,875.19, which is far closer to their number than Martin's.

Martin contends that Capital One's valuation is inaccurate because Gaffigan failed to actually drive the car and factor in the mechanical issues. In addition, Martin questioned

---

[4] According to the Joint Prehearing Statement, the parties stipulated that "Martin engaged Alvarez Automotive Repair & Services to appraise the Vehicle. The repair estimate and vehicle evaluation dated November 5, 2018, lists an estimate of repairs and a mechanic's 'opinion valuation' of $2,100.00 with $3,200.00 in repairs needed in order for the vehicle to be in safe operational condition and a higher valuation." (Dkt. #61, Stipulated Facts, ¶ 10). When Capital One objected to the repair estimate (Martin's Ex. 2), he withdrew the document. However, the stipulation itself remains in the record as uncontested.

[5] This entity is not familiar to the court and Gaffigan did not explain its significance, if any. It appears from his report, though, that the sale prices were listed on websites, e.g., cars.com and vast.com, which may (or may not) be available to the public.

[6] The basis for those adjustments was not explained to the court at the hearing but the information is contained in the appraisal. The mileage and equipment adjustments are readily understandable; the Vehicle had lower mileage than expected for its age and equipment options beyond the standard items tend to increase the value. But the "projected sold adjustment" ranges from $553 to $760—over $200—and the report explanation of "an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)" does not shed any further light on this mystery number.

3

| Name of Assigned Judge | LaShonda A. Hunt | CASE NO. | 18bk18105 |
|---|---|---|---|

the thoroughness of the examination given the pictures showing snow covering the Vehicle at the time of the inspection. Capital One counters that Martin has failed to present evidence to meet his burden of proof on valuation and therefore this court should accept its appraiser's opinion.

## Discussion

As a Chapter 13 debtor, Martin seeks to exercise the cramdown option for his Vehicle under § 1325(a)(5)(B) of the Bankruptcy Code. That provision would allow Martin to confirm a plan so long as he repays the value of the Vehicle, even if less than the full amount due to Capital One. So the issue to be determined here is the proper value of the Vehicle he wants to retain, at the time the petition was filed.

Section 506 of the Code addresses this very question and provides as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition. . . . With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the value is determined.

11 U.S.C. § 506(a)(2).

The burden of establishing replacement value is on the debtor. *In re Miles*, 524 B.R. 915, 920 (Bankr. N.D. Ga. 2015). But there is no defined formula for determining value in the Code. *See In re Gonzalez*, 295 B.R. 584, 591 (Bankr. N.D. Ill. 2003) (affirming that *Rash* requires bankruptcy courts to look at the "specific facts of each case"). As such, courts have applied various methods to the analysis by focusing on the particular factual circumstances. *See In re Gonch*, 435 B.R. 857, 863 (Bankr. N.D. N.Y. 2010) (collecting cases). The most common starting point, though, is retail value and then reductions to reflect the condition of the vehicle and cost of repairs. *In re Miles*, 524 B.R. at 920. Ultimately, the question to be answered is "what a willing buyer . . . would pay a willing seller to buy the specific [vehicle] in question (warts and all), based on the . . . evidence presented at the hearing." *Gonzalez*, 295 B.R. at 591.

Martin asserts that his Vehicle should be valued at $1,602, even though six months ago, he filed schedules with a value of $4,000. The court credits Martin's testimony that he was estimating at the time of filing based upon the amount of the debt, approximately $5,000, but after receiving the Edmunds.com quote, he believed a lower number might be more appropriate. Furthermore, since Martin has owned and driven the Vehicle regularly

4

| Name of Assigned Judge | LaShonda A. Hunt | CASE NO. | 18bk18105 |
|---|---|---|---|

for over 3 years, he is well aware of its condition. Thus, the court also finds his testimony about mechanical problems believable, which Capital One's appraiser admittedly could not assess and therefore did not take into consideration in reaching his valuation determination. Still, the court concludes that Martin's number is unreasonably low.

Private-party sale information is relevant and quotes from a recognized industry player like Edmunds.com are typically helpful. But the one-page, barely readable printout Martin tendered contains no details about any of the information he supplied in order for the program to generate a pricing determination. What makes the vehicle "rough" (which, by the way, appears to be the category with the lowest expected value)? After all, mechanical issues are typical for a 13-year old vehicle and there was no indication from Martin's testimony that his ability to actually use the Vehicle is severely hampered by the transmission or steering problems. More significantly, Martin stated a mileage of 150,000 on Edmunds.com, which is well beyond the 110,000 at the time of filing. A 40,000 mileage difference certainly affects the value calculation. In sum, Martin failed to lay a foundation to establish the reliability of the Edmunds.com quote, and therefore, it will not be considered by the court.

On the other hand, Capital One's reliance on the NADA book values of $6225 (as stated in the confirmation objection) and $6600 (as testified to by its appraiser) is misplaced, as those are unreasonably high. The NADA guide assumes the Vehicle is in "extra clean" condition, which is not the case here. *See e.g., Gonzalez,* 295 B.R. at 591. While the court found Gaffigan's expert testimony helpful overall, its usefulness is somewhat limited by the fact that he has never even seen the Vehicle and has no knowledge of its actual "condition," which is what the Code expressly requires this court to consider for purposes of § 506(a)(2). What Gaffigan does offer with the NADA value, though, is a starting point for valuation.

The average of Capital One's two NADA values is $6,412.50. Gaffigan assessed the Vehicle condition as overall good with little wear and tear, but he based that on pictures of it partially covered in snow and his employee's report, rather than his own personal inspection. Because Martin credibly testified to more visible exterior and interior damage, the court finds the Vehicle condition is closer to average and deducts an additional $500. Finally, Martin testified that repairs are needed but did not provide concrete numbers. However, Capital One does not contest the fact that Martin hired a mechanic who opined that the Vehicle needs $3,200 in repairs. While Martin withdrew the exhibit, and the court would have not have allowed it to be used at trial anyway in light of Capital One's objection to his failure to present live witness testify on the matter, the existence of such an extensive repair quote does support Martin's contention that at least the transmission and power steering pump are major and expensive repairs. Those are the types of costs that a willing buyer would factor into its assessment of the amount to pay for this Vehicle. Consequently, the court will deduct an additional $1,250. The Vehicle is valued, then, at $4,662.50. That number is certainly in the ballpark of Gaffigan's loss settlement value—$5,150—which is

| Name of Assigned Judge | LaShonda A. Hunt | CASE NO. | 18bk18105 |
|---|---|---|---|

based on sales offers by dealers of comparable vehicles that presumably have already been repaired and includes a markup.

### Conclusion

For purposes of determining the secured claim of Capital One, the value of its collateral is $4,662.50. Martin has 10 days to file and serve an amended plan that conforms to this court's ruling. Decision has been reserved on the question of the appropriate interest rate to be applied to Capital One's claim. All remaining unresolved matters will be heard at the final confirmation hearing on February 11, 2019, at 10:30am.

Dated: January 23, 2019

*/s/ LaShonda A. Hunt*
LaShonda A. Hunt
United States Bankruptcy Judge

6